Rosalind Bower ARNOLD and Jimmy Lynn Arnold, Individually as Joint Tenants with their Children, John Tracy Arnold, Uless Joseph Arnold, Lillian Hanna Arnold, Benjamin Christopher Arnold, and Jimmy Bower Arnold, Appellees,

v.

MORGAN KEEGAN & COMPANY, INC., and D. Stanley Shelton, Appellants.

Supreme Court of Tennessee, at Knoxville.

Jan. 16, 1996.

Michael Richards, Courtney N. Pearre, John R. Branson, Memphis, for Appellants.

Charles A. Wagner, III, Wagner, Myers & Sanger, P.C., Knoxville, for Appellees.

BIRCH, Justice.

We accepted this application for review, filed by Morgan Keegan & Company, Inc. and D. Stanley Shelton pursuant to Tenn. R.App.P. 11, in order to clarify the standard under which a final decision rendered by an arbitration panel may be judicially reviewed. We find that under the facts and circumstances here present, the review conducted by the Court of Appeals was unduly extensive; we reverse the judgment and reinstate the order of the trial court upholding the ruling of the arbitration panel.

### I

The record reveals that upon the death of her father in 1981, Rosalind Arnold, the appellee, inherited a large number of shares in the Interco Corporation. As a result of Interco's reorganization in October 1988, its stock became virtually worthless. Thereafter, Arnold sought to replace her Interco investment with one capable of producing as steady an income flow as had Interco, while preserving the principal. She discussed the matter with Stanley Shelton, her broker, an employee of Morgan Keegan.

Initially, Arnold suggested the purchase of $1.4 million in certificates of deposit with staggered maturities. Because this investment plan would not produce income sufficient to meet her requirements, Shelton recommended the purchase of Series F preferred stock in First Executive Corporation (FEXCO). Shelton advised Arnold that the FEXCO investment included a "sinking fund," a feature he described as an "insurance policy." This "sinking fund," Shelton stated, guaranteed that in 1991 FEXCO would repurchase its stock for the original price of $25 per share. Shelton told her that FEXCO stock was as safe as a certificate of deposit. At the time of the discussion, FEXCO stock was highly rated.

On January 11, 1989, Arnold purchased approximately 25,000 shares of FEXCO preferred stock at a total cost of $619,387.50. This investment produced, over the following year, approximately $70,000 in dividends.

Regarding Arnold's investment experience, the record shows that prior to her dealings with Shelton she had managed her portfolio of stocks and bonds in the approximate total value of $750,000. Also, she had conducted business with other investment brokerage firms. Moreover, Arnold continued to make many of the investment decisions herself, even after her association with Shelton and Morgan Keegan. Her financial acumen notwithstanding, Arnold testified that in the purchase of the FEXCO shares she relied completely upon Shelton and Morgan Keegan.

The value of FEXCO stock plummeted approximately a year after Arnold's purchase. This drop in value was attributed by some to the negative publicity surrounding the junk bond scandal. Shelton informed Arnold that the "sinking fund" did not appear to be as he had originally described it. As a consequence of the decrease in the stock's value and the fact that no sinking fund existed, Arnold sold her FEXCO stock at a substantial loss.

The agreement between Arnold and Morgan Keegan provided for the resolution of disputes by arbitration and permitted the customer to choose the forum. The agreement provided in pertinent part:

Arbitration is final and binding on the parties. The parties are waiving their right to seek remedies in court, including the right to jury trial.... The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited. The panel of arbitrators will ordinarily include a minority of arbitrators who were or are affiliated with the securities industry. I agree, and by carrying my account you agree that all controversies

which may arise between us concerning any transaction or the construction, performance, or breach of this or any other agreement between us pertaining to securities and other property, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the State of Tennessee, before the American Arbitration Association, or before the New York Stock Exchange, Inc. or an arbitration facility provided by any other exchange of which you are a member, or the National Associations of Securities Dealers, Inc. or the Municipal Securities Rulemaking Board and in accordance with the rules obtaining of the selected organization. I may elect in the first instance whether arbitration shall be by the American Arbitration Association, or by an exchange or self-regulatory organization of which you are a member. . . . The award of the arbitrators, or of the majority of them, shall be final, and judgment on the award rendered may be entered in any court, state or federal, having jurisdiction.

Arnold filed a claim for arbitration and chose the American Arbitration Association. The arbitration panel convened. After hearing testimony, the panel found in favor of Morgan Keegan. In its seven-page opinion, the panel rejected Arnold's position that Shelton had made material misrepresentations to her. The panel found Arnold to be a relatively sophisticated investor who remained firmly in control of her portfolio—a person who exercised independent judgment at all times. The panel further found that although Shelton may have made mistakes or omissions in describing the "sinking fund" to Arnold, they did not amount to material misstatements, and Arnold did not rely upon them. After weighing the conflicting testimony and considering Arnold's investment objectives, her sophistication, and other relevant factors, the panel concluded that she would have made the FEXCO investment regardless of any misstatements which Shelton may have made. The panel also rejected

1. Tenn.Code Ann. § 29–5–313(a)(3).

Arnold's version of the conversation in which the investment was allegedly described as "absolutely safe."

Pursuant to Tenn.Code Ann. § 29–5–313, Arnold moved the Chancery Court of Knox County to vacate the panel's decision. She insisted that (1) the award was procured by undue means; (2) there was evident partiality by the arbitrators; (3) the arbitrators exceeded their powers; and (4) the award was completely irrational, was based on gross mistake of fact, and was in manifest disregard of the undisputed facts and the law acknowledged by the arbitrators to be applicable.

The trial court conducted a hearing that consisted, primarily, of a review of the verbatim transcript of the arbitration proceedings. The trial court concluded that an arbitration decision should not be vacated merely because the trial court disagrees with the result reached, nor should the trial court permit the issues to be relitigated. Accordingly, the trial court overruled Arnold's motion to vacate and confirmed the panel's decision.

On appeal to the Court of Appeals, Arnold asserted the same grounds as had been submitted to the Chancery Court. The Court of Appeals, finding that the arbitrators had "exceeded their powers,"[1] vacated the arbitration decision. In formulating its ruling, the Court of Appeals conducted an extensive review of the transcript of the arbitration hearing.

We conclude that the Court of Appeals conducted a review far too extensive than permitted by the provisions of the arbitration statute and misinterpreted Tenn.Code Ann. § 29–5–313(a)(3).

II

We begin with a discussion of the standards of review to be used by a trial court when reviewing an arbitration award and by the Court of Appeals when reviewing the trial court's judgment in an arbitration case. Tennessee has adopted the Uniform Arbitration Act, Tenn.Code Ann. §§ 29–5–301 through 320 (Supp.1995). This Act "governs the scope of judicial review of arbitration

awards." *International Talent Group, Inc. v. Copyright Management, Inc.*, 769 S.W.2d 217, 218 (Tenn.App.1988). For guidance, we can look to other jurisdictions which have adopted the Uniform Arbitration Act. Tenn. Code Ann. § 29–5–320 ("This part shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.").

■■■ The standard to be applied by the trial court is a narrow one. It is well established that courts should play only a limited role in reviewing the decisions of arbitrators. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987).

> [W]here the party has agreed to arbitrate, he or she, in effect has relinquished much of [the right to a court's decision on the merits]. The party still can ask a court to review the arbitrator's decision, *but the court will set that decision aside only in very unusual circumstances.*

*First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995) (emphasis added) (citations omitted).[2] The trial court is limited by the provisions of the statute which allow a vacation or modification of an award. *See International Talent Group,* 769 S.W.2d at 218.

The statute itself provides that upon application of a party to the arbitration, the trial court "shall confirm an award, unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award." Tenn.Code Ann. § 29–5–312. Section 29–5–313 provides that the trial court "shall" vacate an award under certain specifically enumerated circumstances.[3] Section 29–5–314 provides for modification or correction of award under alternative enumerated circumstances.[4] Under the terms of the statutes, a trial court may not vacate an award simply because it disagrees with the result. Tenn.Code Ann. § 29–5–313(5).

The limiting language of the statutes governing vacation and modification of arbitration awards evidences an intent to limit *severely* the trial court's authority to retry the issues decided by arbitration. As the New Mexico Supreme Court observed in *Melton v. Lyon:* "It is not the function of the Court to hear cases de novo and consider evidence presented to the arbitrators, but rather to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award." 108 N.M. 420, 773 P.2d 732, 733 (1989) (citation omitted). Moreover, the trial court must accord deference to the arbitrator's award.

> Once an arbitration award is entered, the finality that courts should afford the arbitration process weighs heavily in favor of

---

**2.** While *First Options of Chicago* concerns the Federal Arbitration Act, we note that the purpose of the Federal and Uniform Arbitration Act is the same: to promote private settlement of disputes, thereby bypassing the courts. As such, the scope of review advanced by the United States Supreme Court has equal application in a case under the Uniform Arbitration Act to the extent that such review furthers the common goal of the acts.

**3.** Tenn.Code Ann. § 29–5–313 provides for vacation of an award where:

> (1) The award was procured by corruption, fraud or other undue means;
> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (3) The arbitrators exceeded their powers;
> (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material

to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 29–5–306, as to prejudice substantially the rights of a party; or

> (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 29–5–303 and the party did not participate in the arbitration hearing without raising the objection.

**4.** Tenn.Code Ann. § 29–5–314 provides for modification or correction of an award where:

> (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
> (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

the award. Courts are justified in exercising great caution when asked to set aside an arbitration award, which is the product of the theoretically informal, speedy and inexpensive process of arbitration, freely chosen by the parties. All doubts are to be resolved in favor of arbitrability.

*State ex rel. Hooten Const. Co. v. Borsberry Const. Co.,* 108 N.M. 192, 769 P.2d 726, 727 (1989) (citations omitted).

Courts, thus, do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined. As long as the arbitrator is, arguably, construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.

■ The agreement in this case provided that the arbitrators were not required to make written findings of fact and law. Such is normally the case. Thus, under usual circumstances, any ground for vacating or modifying the arbitration award will usually appear on the face of the award, not within the transcript. It would be unfair and incongruous to hold that an arbitration award in hearings in which a transcript was made is more open to attack than in a case in which no transcript was made. Thus, the case under submission was no more open to review by the trial court than was any other arbitration case. Moreover,

> [a]rbitration is attractive because it is a more expeditious and final alternative to litigation.
>
> > The very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned. The object is to avoid what some feel to be the formalities, the delay, the expense and vexation of ordinary litigation. Immediate settlement of controversies by arbitration removes the necessity of waiting out a crowded court docket. . . .
>
> Arbitration's desirable qualities would be heavily diluted, if not expunged, if a trial

court reviewing an arbitration award were permitted to conduct a trial *de novo*.

*Boyd v. Davis,* 127 Wash.2d 256, 897 P.2d 1239, 1242 (1995) (*en banc*) (citation omitted).

Now we consider the standard of review to be applied by the Court of Appeals when it reviews the decision of a trial court in an arbitration case. We look again to the United States Supreme Court for guidance. In *First Options of Chicago, Inc.,* the Court held that when reviewing a trial court's decision in an arbitration case the Court of Appeals should apply ordinary standards. —— U.S. at ——, 115 S.Ct. at 1926. Consequently, it should accept findings of fact that are not "clearly erroneous." The Court reasoned that

> it is undesirable to make the law more complicated by proliferating review standards without good reason. More importantly, the reviewing attitude that a court of appeals takes toward a district court decision should depend upon "the respective institutional advantages of trial and appellate courts," not upon what standard of review will more likely produce a particular substantive result.

*Id.* (citation omitted).

■ We agree with the United States Supreme Court and hold that when the Court of Appeals reviews a trial court's decision in an arbitration case, it should review findings of fact under a "clearly erroneous" standard. We observe that this holding does not restrict the discretion of the arbitrators; it simply does not allow an extra measure of discretion for the trial court. As the United States Supreme Court said:

> The law, for example, tells all courts (trial and appellate) to give administrative agencies a degree of legal leeway when they review certain interpretations of the law that those agencies have made. But, no one, to our knowledge, has suggested that this policy of giving leeway to agencies means that a court of appeals should give *extra* leeway to a district court decision that upholds an agency. Similarly, courts grant arbitrators considerable leeway when reviewing most arbitration decisions; but that fact does not mean that appellate

courts should give *extra* leeway to district courts that uphold arbitrators.

*Id.* (citation omitted).

■ Our attitude toward review of arbitration decisions is deferential, as is our standard of review. Under this deferential standard of review, courts are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misrepresentation of the contract. *Misco,* 484 U.S. at 36, 108 S.Ct. at 369.

■ Judicial review of arbitration decisions is statutorily limited, and any judicial review must be conducted within those limits. Nevertheless, the standard of review to be used by the intermediate court in reviewing a trial court's decision that refuses to vacate, or confirms, an arbitrator's award is an issue. Most of these controversies will be determined by the facts, and the intermediate court should accept those facts as found unless clearly erroneous. *First Options of Chicago,* —— U.S. at ——, 115 S.Ct. at 1926.

Matters of law, if not able to be resolved by resort to the controlling statutes, should be considered independently, with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution.

■ Since the Court of Appeals in this case essentially conducted a *de novo* review of the arbitration proceedings rather than a more restricted review of the trial court's action, we find that its review was unduly broad.

### III

The question remains, however, whether the arbitration panel exceeded its powers, as Arnold insists.

As stated above, the trial court may vacate or modify an arbitration award only as provided by statute. Tenn.Code Ann. § 29–5–313(a), states:

(a) Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 29–5–306, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under § 29–5–303 and the party did not participate in the arbitration hearing without raising the objection.

The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

■ Arbitrators "exceed their powers" when they go beyond the scope of authority granted by the arbitration agreement. *International Talent Group,* 769 S.W.2d at 218. Arnold asserts that the panel exceeded its powers because "the arbitration agreement requires the arbitrators to apply the law of the State of Tennessee, and the arbitration decision is completely irrational and totally contrary to the undisputed and agreed evidence and the law acknowledged to be applicable."

■ The trial court concluded that Arnold's position was simply that the panel had made a mistake of law or fact when it found that there was no reliance on a material misrepresentation. We cannot say this conclusion was erroneous. Since the trial court is not empowered to retry the issues before the arbitrator, it was proper for the court to accept the panel's findings unless clearly erroneous. Nothing about the award suggests that the panel failed to apply Tennessee law, as required by the agreement. Thus, the panel did not go outside the arbitration agreement; hence, it did not exceed its powers.

■ We further note that Tenn.Code Ann. § 29–5–313(a) specifically provides that

"[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Tenn.Code Ann. § 29–5–313(a)(5). Thus, an arbitration award is not subject to vacation for a mere mistake of fact or law. *See McLeroy v. Waller*, 731 S.W.2d 789, 791 (Ark.Ct.App. 1987); *Seither & Cherry Co. v. Illinois Bank Bldg. Corp.*, 95 Ill.App.3d 191, 50 Ill.Dec. 672, 677, 419 N.E.2d 940, 945 (1981); *Western Waterproofing Co. v. Lindenwood Colleges*, 662 S.W.2d 288, 291 (Mo.Ct.App.1983); *Turner v. Nicholson Properties, Inc.*, 80 N.C.App. 208, 341 S.E.2d 42, 45 (1986). *Turner* is particularly instructive here:

> In essence respondent argues that an arbitrator who errs as a matter of law exceeds his powers and as a result the award can be vacated. Allowing such relief is inconsistent with the general rule that "errors of law or fact, or an erroneous decision of matters submitted to [arbitration], are insufficient to invalidate an award fairly and honestly made."

341 S.E.2d at 45 (citation omitted).

Arnold urges us to find that the panel did not make a "mere mistake of fact or law," but made a decision so far outside of the law that it should be considered irrational and, hence, subject to vacation. We decline to do so.

▆ First, we do not find that the award was "irrational"; that is, that the panel failed to follow the law. Second, even if it were "irrational," an arbitration award may be vacated only for the reasons set forth in the statute. Tenn.Code Ann. § 29–5–313(a) simply does not provide for the vacation of an award because it is irrational.

We note that courts have interpreted the Federal Arbitration Act to allow an arbitration award to be vacated on the ground that it is irrational. *See e.g., Storer Broadcasting Co. v. American Fed'n of Television and Radio Artists, Cleveland Local, AFL–CIO*, 600 F.2d 45 (6th Cir.1979); *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125 (3d Cir.1972); *O–S Corp. v. Samuel A. Kroll, Inc.*, 29 Md.App. 406, 348 A.2d 870 (1975). However, the language in the Federal Arbitration Act is significantly different from the Uniform Act adopted by Tennessee. First, in the Federal Act the statute provides for vacation of the award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) Supp.1992. Second, the Federal Act does not include language like that in Tenn.Code Ann. § 29–3–313(a) disallowing vacation of the award for a mistake of fact or law. Finally, even if the Federal Act applied in this case, we find that the award was not irrational within the meaning of the cases interpreting the Federal Act. To demonstrate that the award was "fundamentally irrational" it must be shown that the award "is based on reasoning 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling.'" *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir.1977); *Local 1466, Int'l Brotherhood of Electrical Workers, AFL–CIO v. Columbus & Southern Ohio Electric Co.*, 455 F.Supp. 471, 474 (S.D.Ohio 1978). The award in this case does not meet this standard. In any event, we hold that under Tenn.Code Ann. § 29–5–313(a) an arbitration award cannot be vacated because it is "irrational."

## IV

With regard to arbitration in general, the Court of Appeals of North Carolina in *Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C.App. 407, 255 S.E.2d 414 (1979), has stated:

> If an arbitrator makes a mistake, either as to law or fact, it is a misfortune of the party, and there is no help for it. There is no right of appeal and the Court has no power to revise the decisions of "judges who are of the parties' own choosing." An [arbitration] award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens a door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact, may be suggested by the dissatisfied party. Thus ... arbitration, instead of ending would tend to increase litigation.

255 S.E.2d at 420. By enacting the statutes that provide for arbitration of disputes, the

General Assembly has recognized that this form of alternative dispute resolution should be made available to all citizens. This Court, following the lead of the legislature, has established a Commission on Alternative Dispute Resolution and has recently promulgated rules that will permit and encourage a wider judicial presence and greater participation in alternative dispute resolution. Admittedly, our investment in this process is heavy; nevertheless, if alternative dispute resolution is to succeed, there must be finality—finality of arbitration awards and decisions.

Strong reasons support this need for finality. The reason for attaching such a high degree of conclusiveness to an award made by arbitrators is that the parties have, themselves, by agreement, substituted a tribunal of their own choosing for the one provided and established by law, to the end that they may avoid the expense usually incurred by litigation and bring the cause to a speedy and final determination. To permit a dissatisfied party to set aside the arbitration award and to invoke the Court's judgment upon the merits of the cause would render arbitration merely a step in the settlement of the dispute, instead of its final determination. These reasons, articulated by the Supreme Court of Florida over seventy-five years ago in *Johnson v. Wells*, 72 Fla. 290, 73 So. 188, 190–91 (1916), remain relevant under today's arbitration legislation.

Thus, the finality and enforceability of an arbitration award is a characteristic of arbitration that distinguishes it from other forms of alternative dispute resolution. Its integrity must not be undermined or compromised, but preserved and enhanced.

For all these reasons, we find that the Court of Appeals misinterpreted its scope of review and exceeded the authority of Tenn. Code Ann. § 29–5–313(a). Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

ANDERSON, C.J., and DROWOTA, REID and WHITE, JJ., concur.