LORI PARR, SUE MURRAY,       )
OLLIE STUART, KEVIN          )
SELLERS, MARY LOU DAVY,      )
                             )
        Plaintiffs/Appellants )      Appeal No. **FILED**
                             )       01-A-01-9811-CV-00573
v.                           )       **June 23, 1999**
                             )       Rutherford Circuit
                             )       No. 36015    **Cecil Crowson, Jr.**
TOWER MANAGEMENT            )                     **Appellate Court Clerk**
COMPANY, CEDAR PARK         )
MOBILE HOME ESTATES,        )
CATHY BORN, ANN SNELL,      )
                             )
        Defendants/Appellees. )
                             )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR
RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, JUDGE

LORI PARR, Pro Se
1784 West Northfield Blvd., Box 267
Murfreesboro, Tennessee  37129

SUE MURRAY STEWART, Pro Se
1263 Wenlon Drive
Murfreesboro, Tennessee  37130

BARBARA J. PERUTELLI
Schulman, LeRoy & Bennett
501 Union Street, 7th Floor
P. O. Box 190676
Nashville, Tennessee  37219-0676

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

This case started with a five page complaint in the Circuit Court of Rutherford County, Tennessee and expanded to occupy the known universe.

Plaintiffs, Lori Parr, Sue Murray, Ollie Stuart, Kevin Sellers and Mary Lou Davy, employed attorney, Lawrence H. Hart, to file suit against Tower Management Company, Cedar Park Mobile Home Estates, Cathy Born, and Ann Snell, collectively and individually.

Suit was filed December 27, 1995, alleging that Plaintiffs were present and former lessees of mobile home lots in Cedar Park Mobile Home Estates. The complaint charged all Defendants with being ". . . deliberately and wilfully engaged in a course of unfair, deceptive, unlawful and outrageous conduct which victimized and caused injury to the plaintiffs and other residents of the mobile home park." Among the practices alleged were unlawful ouster and eviction from their respective lots, violation of the Tennessee Consumer Protection Act, intentional infliction of emotional harm, and unlawful ouster under Tennessee Code Annotated section 66-28-504. Plaintiffs sought treble damages under the Consumer Protection Act, punitive damages and compensatory damages.

By amended complaint filed December 28, 1995, William Steel, Login Boggs, and Mary Jane Boggs were added as individual Defendants.

Extensive discovery followed and Plaintiffs ultimately filed a motion to add additional Plaintiffs while Defendants filed a motion for summary judgment.

On January 9, 1998, the following order was entered:

This cause came on further to be considered by the Court on three separate issues, first a motion to add additional Plaintiffs, opposed by the Defendants; second a motion of the Defendants for summary judgment, opposed by the Plaintiffs; and third a joint motion of the parties that the cause set for trial January 12, 1998 be continued in order to allow the matter to be presented through arbitration, and from the entire file in this cause, the Court finds that the first two motions should be denied and that the joint motion should be granted.

IT IS THEREFORE ORDERED that the motion to add

additional Plaintiffs is denied.

IT IS THEREFORE ORDERED that the Defendants' motion for summary judgment is denied.

FINALLY IT IS ORDERED that the joint motion of the parties to continue the trial from the setting of January 12, 1998 is granted, and the joint motion to proceed to arbitration pursuant to the provisions of *Tennessee Code Annotated* §29-5-101, *et seq.* is granted. Further this cause shall remain on the active docket in this court through May 31, 1998, not subject to further orders of dismissal prior to that time, subject to further proceedings pursuant to the provisions of *Tennessee Code Annotated* §29-5-118.

Costs are reserved pending the entry of the final order in this cause.

On January 12, 1998, the trial court entered the following order:

As evidenced by signature of counsel for the respective parties hereto, it is agreed that the parties shall resolve all disputes by submitting them to arbitration. The Arbitrator shall determine all issues in this cause including the assessment of discretionary costs and court costs. The costs of arbitration shall be shared equally by plaintiffs and defendants.

With no further orders of the court the case was heard on arbitration by Judge Joe C. Loser on March 5, 1998. Lawrence H. Hart appeared as counsel for the plaintiffs and Barbara J. Perutelli appeared as counsel for the defendants All of the plaintiffs, including Lori Parr and Sue Murray, fully participated in the arbitration hearing. The arbitrator took the case under advisement and on March 31, 1998, issued a twenty page "arbitration award" finding in favor of the plaintiffs and against the defendants. In this arbitration award Judge Loser held, in part:

Thereafter, in 1994, the rules and regulations were changed by adding rule 6a, which states:

All homes moving into the community must not be older than eight (8) years old, and approved by management.

The new rule was interpreted to mean that any buyer of the plaintiffs' mobile homes, all of which were older than eight years, would be required to remove the mobile home from the park. The interpretation caused the plaintiffs' mobile homes to lose value, for which no compensation was offered or paid.

Under such circumstances, the action of Cedar Park was

unfair and deceptive in violation of the Tennessee Consumer Protection Act, and Cedar Park is thus liable to the plaintiffs, and each of them, for their "actual damages," which, under the circumstances of these cases, is either the difference in value of the mobile home immediately before and after the changed rule for selling older homes or, if the evidence does not establish the before and after values, the reasonable cost of relocating the home to a similar location. The most credible evidence of the reasonable relocation cost was the $1,500.00 estimate by Mr. Boggs.

The arbitrator finds the following actual damages to have been established from a preponderance of the evidence:

Mary Lou Davy, $5,000.00, representing the difference between the before and after value of her home;

Lori Parr, $1,500.00, representing the reasonable cost of relocation;

Sue Murray, $1,500.00, representing the reasonable relocation cost[7]; and

Kevin Sellers, $10,500.00, representing the difference between [the between] the before and after value of his home.

Additionally, and as the Act provides, each of the plaintiffs may recover a reasonable attorney's fee not exceeding one-third of his or her recovery. If the parties are unable to agree on the reasonable value of the services provided by plaintiffs' counsel, an additional evidential hearing may be requested.

The arbitrator finds that the defendants' violation of the Consumer Protection Act was not willful or wanton. Thus, this is not an appropriate case for an award of treble damages.

_____

[7] Ollie Stewart has no separate claim.

On April 15, 1978, the defendants paid the arbitration award, including attorney fees and one-half of the arbitrator's fee into the Circuit Court of Rutherford County.

At this point, Plaintiff, Lori Parr, allied with Plaintiff, Sue Murray, fired their attorney, Lawrence H. Hart, and proceeded thereafter to represent themselves.

Thereafter, hundreds of pages of documents reflecting little regard for Rules of Procedure or Rules of Law, are set forth in this record, bitterly second

guessing the trial tactics of Attorney Hart and attacking, with near equal vigor, the actions of Attorney Perutelli.

Returning now to the correct procedural and substantive track, it is first noted that, although Lori Parr and Sue Murray participated and testified in a full hearing before the arbitrator on March 8, 1998, we are favored with no evidentiary transcript of that hearing. Keeping in mind that the defendants cast before the arbitrator have paid the judgment in full into the registry of the court; and that only certain of the prevailing plaintiffs, who are dissatisfied with their respective awards seek to disavow the arbitration; we proceed.

Weaving our way through the seemingly endless objections interposed by Plaintiffs Parr and Murray, we reach the review by the trial judge of the actions of the arbitrator. The trial judge is bound, as are we, by the stringent limitations set forth in *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445 (Tenn. 1996). Therein, the Supreme Court, in construing the Tennessee arbitration statutes, held:

> We begin with a discussion of the standards of review to be used by a trial court when reviewing an arbitration award and by the Court of Appeals when reviewing the trial court's judgment in an arbitration case. Tennessee has adopted the Uniform Arbitration Act, Tenn. Code Ann. §§ 29-5-301 through 320 (Supp. 1995). This Act "governs the scope of judicial review of arbitration awards." *International Talent Group, Inc. v. Copyright Management, Inc.*, 769 S.W.2d 217, 218 (Tenn. App. 1988). For guidance, we can look to other jurisdictions which have adopted the Uniform Arbitration Act. Tenn. Code Ann. § 29-5-320 ("This part shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.").
> The standard to be applied by the trial court is a narrow one. It is well established that courts should play only a limited role in reviewing the decisions of arbitrators. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987).
>> [W]here the party has agreed to arbitrate, he or she, in effect has relinquished much of [the right to a court's decision on the merits.] The party still can ask a court to review the arbitrator's decision, *but the court will set that decision aside only in very unusual circumstances.*
> *First Options of Chicago, Inc. v. Kaplan,* _____ U.S. _____, _____, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995)

(emphasis added) (citations omitted).[2] The trial court is limited by the provisions of the statute which allow a vacation or modification of an award. *See International Talent Group*, 769 S.W.2d at 218.

_____

[2] While *First Options of Chicago* concerns the Federal Arbitration Act, we note that the purpose of the Federal and Uniform Arbitration Act is the same: to promote private settlement of disputes, thereby bypassing the courts. As such, the scope of review advanced by the United States Supreme Court has equal application in a case under the Uniform Arbitration Act to the extent that such review furthers the common goal of the acts.

\* \* \*

The limiting language of the statutes governing vacation and modification of arbitration awards evidences an intent to limit *severely* the trial court's authority to retry the issues decided by arbitration. As the New Mexico Supreme Court observed in *Melton v. Lyon*: "It is not the function of the Court to hear cases de novo and consider evidence presented to the arbitrators, but rather to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award." 108 N.M. 420, 773 P.2d 732, 733 (1989) (citation omitted). Moreover, the trial court must accord deference to the arbitrator's award.

*Arnold v. Morgan Keegan Co., Inc.*, 914 S.W.2d 445, 447-48 (Tenn. 1996).

Thoroughly conscious of the limitations thus placed upon his authority by the Uniform Arbitration Statutes and the construction thereof by the Tennessee Supreme Court, the learned chancellor held:

> The court has considered the provisions of the statutory and case law, and has determined that all Plaintiffs are bound by the decision of their attorney to submit the matter to binding arbitration combined with the participation by these parties in the arbitration process, that the decision of the arbitrator must be affirmed, . . .

This holding by the chancellor is clearly correct when the actions of Lori Parr and Sue Murray are considered in the context of the arbitration proceeding. While it is true that Attorney Hart could not bind his clients to compulsory arbitration without their agreement, and the record does not disclose an affirmative agreement to arbitrate by them, it is equally true that they have ratified his actions and cannot now be heard to complain about the arbitration.

The record before this court shows no complaint at all by Parr or Murray until after the arbitrator disappointed them. The fully participated in the proceeding, testified before the arbitrator, consulted with their attorney before the arbitrator, and uttered no protest which would allow the trial court to vacate the award under Tennessee Code Annotated section 29-5-313 or otherwise. Tenn. Code Ann. § 29-5-313 (Supp. 1998). No such protest is preserved for appellate review. As the chancellor held, they cannot acquiesce and indeed fully participate in the arbitration and then, disappointed with the outcome, disavow the action of their attorney and agent.

> It is an undisputed principle of law that where an agent in the first place exceeds his authority, or acts without authority, such acts may become the acts of the principal by ratification, which may be either expressed or implied. See 1 Am. & Eng. Enc. Law (2d Ed.) p. 1195, and authorities cited; McClure v. Evartson, 14 Lea, 495; Oil Works v. Jefferson, 2 Lea, 581; Williams v. Storm, 6 Cold. 207; Evans v. Buckner, 1 Heisk, 294. It is further well-settled law that, if a party does not disavow the acts of his agent as soon as he can after they come to his knowledge, he makes these acts his own. See Pars. Cont. 49, 50, and authorities above cited. In the case of Williams v. Storm it is said: "Where the principal has the option to repudiate the contract or to ratify it, he is bound promptly to do either the one or the other." 6 Cold. 207. It is stated in all the authorities on these subjects, however, that, before a ratification can be implied or binding, the principal must have knowledge of the acts which he is supposed to ratify. In some of the cases it is stated that he must have full knowledge, and in others that he must have knowledge of all the material facts and circumstances. See 1 Am. & Eng. Enc. Law (2d Ed.) p. 1189. It is also held that knowledge of facts by another agent, where the matter is within the scope of his agency, is sufficient. See authority last cited, p. 1192. It is further held that, if the facts show a ratification, the intention of the parties is immaterial; so that, to constitute a ratification, it is not material whether a ratification was contemplated or not. See Hazard v. Spears, 2 Abb. Dec. 353. It has further been held that the conduct of the principal will be liberally construed in favor of a ratification or adoption of the acts of the agent (see 1 Am. & Eng. Enc. Law. p. 1195, and authorities there cited); in all the cases it being held that, when a knowledge of the transaction comes to the principal, he must with reasonable promptness disaffirm the acts of the agent, or he will be held bound thereby.

*Bement & Sons v. Armstrong*, 39 S.W. 899, 903 (Tenn. Chan. App. 1896).

After affirming the decision of the arbitrator, the trial court ordered distribution of the arbitration award as follows:

> IT IS THEREFORE ORDERED that the Court approves the award determined by the arbitrator. Further it is ordered that the Clerk shall pay the following sums to the following individuals: to Plaintiff Parr the sum of $1,220.07; to Plaintiff Murray the sum of $1,220.07; to Plaintiff Davy the sum of $4,067.02; and to Plaintiff Sellers the sum of $8,541.20; to Attorney Hart the sum of $6,166.66 for attorney's fees, and the sum of $1,261.14 as reimbursement for out-of-pocket expenses for court reporter fees, advanced payment to the arbitrator, and long distance telephone charges; to Arbitrator Loser the sum of $2,190.50, representing half of the cost of arbitration, which must be paid by the awards to the Plaintiff. Further it is ordered that the requests for payment and further reimbursements for assistance in trial preparation submitted by Plaintiff Parr must be respectfully denied. Further it is ordered that Plaintiffs Parr and Murray shall proceed further in this cause pro se, upon their request, and Attorney Hart is relieved from further responsibility for representation of these Plaintiffs.

This order entered June 25, 1998, on pages 293-295 in Volume II of the record, would appear to have been intended by the trial judge as a final judgment, but 294 pages later, in Volume IV of the transcript under date of October 26, 1998, the following order appears:

> This cause came on to further be considered by the Court on this the 26th day of October, 1998, upon the entire file in this cause, from all of which the Court finds that the pending motions for a new trial, and to alter or amend the prior judgment must be respectfully denied, and the Order of June 25, 1998 shall be affirmed, and made the final order of the Court in this cause, and that all other pending motions must be respectfully denied.
> It is therefore ordered that the Court approves the award determined by the arbitrator. It is further ordered that the Clerk shall pay the following sums to the following individuals:
> To Plaintiff, Parr, the sum of $ 1220.07;
> To Plaintiff, Murray(Stewart), the sum of $ 1220.07;
> To Plaintiff, Davy, the sum of $ 4067.02;
> To Plaintiff, Sellers, the sum of $ 8541.20;
> To Attorney, Hart, the sum of $ 6166.66 for attorney's fees, and the sum of $ 1261.14 as reimbursement for out of pocket expenses for Court Reporter fees, advanced payment to the arbitrator, and long distance telephone charges;
> To Arbitrator, Loser, the sum of $ 2190.50, representing

one-half of the cost of arbitration (the other one-half having been previously paid to him by the Defendants).

Further it is ordered that the request for payments and further reimbursements for assistance in trial preparation submitted by Plaintiff, Parr must be respectfully denied. All further pending motions are also respectfully denied.

Costs in the cause, including a $ 30.00 cost of service of process are taxed against the Defendants up to, through, and including, all costs of the entry of the June 25, 1998 Order, but the costs incurred after June 25, 1998 must be paid by Ms. Parr.

IT IS SO ORDERED AS ABOVE.

Enter this the _26th_ day of _October_, 1998.

From this October 26, 1998 order, Lori Parr and Sue Murray appealed.

The voluminous record on appeal reveals neither verbatim transcript nor Rule 24(c) statement, preserving any evidence heard by the trial judge at any of the hearings in this case.

This court has held:

Our ability to deal with this issue is hampered by the absence of either a transcript of the proceedings in the trial court or a statement of the evidence prepared in accordance with Tenn. R. App. P. 24(c).

When a trial court decides a case without a jury, it's findings of fact are presumed to be correct unless the evidence in the record preponderates against them. Tenn. R. App. P. 13(d). This court cannot review the facts de novo without an appellate record containing the facts, and therefor, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1987); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1988).

*Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. App. 1992).

Pro se Appellants filed, with the trial court, what purports to be a Rule 24(c) statement of the proceedings before the arbitrator on March 5, 1998. This document is not approved by the trial judge in conformity with Rule 24(f), and is not, in fact, a statement of evidence but simply another rambling complaint

against the lawyers in the case. Typical of its contents is the following:

> The plaintiffs Sue Murray and Lori Parr submit the following statement to the Court of what occurred at the arbitration hearing of March 5, 1998. No transcript of the hearing is available because the plaintiffs' former attorney, Lawrence Hart, refused to comply with the plaintiffs' request for a court reporter to be present at the arbitration hearing by stating to the plaintiffs "Who's going to pay for it, are you? I'm certainly not." Therefore, the plaintiffs' will present to the Court their recollection of what transpired at the arbitration hearing with respect to those issues that are the bases of the plaintiffs' appeal, as per Rules of Appellate procedure, Rule 24 C.

> \* \* \*

> In reference to the defendants' attorney Perutelli's Response to the plaintiffs' Murray and Parr's Motions To Make Additional Findings Of Fact, Motions To Alter Or Amend/Alter Judgment, and Motion For A New Trial, page 3, in regards to plaintiff Murray and Parr's "displeasure", plaintiffs Murray and Parr do hereby state to this Honorable Court that the true displeasure of plaintiffs Parr and Murray are that two officers of the Court - one who was supposed to be representing and protecting their best interests - instead chose to fabricate a false story to the arbitrator, to the plaintiffs, and to the trial Court, eventually deceiving this Honorable Court into confirming an arbitration award that was not based upon truth, but instead was based upon false facts, and deliberate lies.

Without a verbatim transcript of the arbitration proceedings or some other kind of transcript, the trial court was hardly in a position to review the award of the arbitrator under the narrow standard of review provided by the Uniform Arbitration Act. *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445, 448 (Tenn. 1996).

As we labor under the same handicaps, along with the additional handicap of having no transcript of any of the proceedings that occurred before the trial judge, we have no basis on which to find the decision of the trial judge to be "clearly erroneous" under the standards applicable to appellate court review. *Arnold v. Morgan Keegan & Co, Inc.*, 914 S.W.2d 445, 449 (Tenn. 1996).

We have no choice but to affirm the judgment of the chancellor.

The appellees assert that the trial court was in error in failing to grant summary judgment to the appellees rather than submitting the case to arbitration.

We affirm the chancellor's decision that material issues of fact existed and summary judgment was improper.

Defendants seek damages for frivolous appeal.

While it is true that these pro se litigants have burdened the courts and counsel with a deluge of unnecessary and improper documentation, mostly as to matters not properly drawn in issue in this case, it must be observed that no agreement executed by Parr and Murray appears in this record for submitting the case to arbitration rather than to trial. They are bound by the arbitration because their voluntary participation therein constituted ratification of the otherwise unauthorized (as far as the record shows) action of Mr. Hart in agreeing to arbitration. The application for frivolous appeal damages will be denied.

All costs on appeal are assessed against Lori Parr and Sue Murray and the judgment of the chancellor is in all respects affirmed. The cause is remanded to the trial court for the purpose of collecting costs.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.

_____
PATRICIA J. COTTRELL, JUDGE