IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2023 Session

## HERITAGE CONSTRUCTION GROUP, LLC v. KAREN VEST

**Appeal from the Chancery Court for Maury County**
**No. 19-655   Christopher V. Sockwell, Judge**

_____

**No. M2023-00028-COA-R3-CV**
_____

A homebuilder sought to modify, correct, or vacate an arbitration award. It claimed the arbitrator exceeded his powers in failing to award attorney's fees and penalties under its contract with the homeowner. The chancery court denied the requested relief and awarded the homeowner attorney's fees for defending against the homebuilder's motion. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S, and ANDY D. BENNETT, J., joined.

J. Brad Scarbrough, Nashville, Tennessee, for the appellant, Heritage Construction Group, LLC.

Kori Bledsoe Jones, Columbia, Tennessee, for the appellee, Karen Vest.

## OPINION

### I.

#### A.

Karen Vest signed a cost-plus contract with Heritage Construction Group, LLC for the construction of a custom home. The contract left a great deal to be desired. Among other problems, the contract described Heritage's "plus" or "builder's fee" as "twenty-two and one half (30%) percent of all construction costs." The contract recited an estimate for completion of the home of $370,000 but included an attachment showing an estimate of

$380,244.12. And the contract specified that the cost of labor and materials and the builder's fee "would be drawn in accordance with guidelines reflected on **Exhibit A,**" but no guidelines were attached. Helpfully, the contract did provide that for each draw Heritage would deliver "a written construction draw request" and that Ms. Vest would have five days from receipt of the request to make payment to Heritage.

Despite the deficiencies, after payments by Ms. Vest of $470,233.26, a certificate of occupancy for the custom home was issued. Heritage's sole member, Trevor Pennington, emailed Ms. Vest that "[y]our move in is legal. Have a great weekend in your new home." And he posted pictures on Facebook of "another happy customer." But Ms. Vest's happiness was short-lived.

The next month Heritage made a demand for an additional $147,776.78 payment. When payment was not forthcoming, Heritage notified Ms. Vest that her occupancy of the home violated the contract and triggered "a penalty of $250.00 per day for each day" Heritage went unpaid. Later, Heritage recorded a mechanics' and materialmen's lien against the property, claiming $161,719.30 was still due under its contract with Ms. Vest. *See* Tenn. Code Ann. §§ 66-11-102(a), -112(a) (2022). The amount of the lien was calculated based on a builder's fee of 30% and included interest and penalties. Heritage followed that up with a chancery court suit against Ms. Vest to enforce its lien. *Id.* § 66-11-126(1) (2022).

Although suit was filed, Heritage alleged that "[a]ll remaining claims and disputes between the parties are subject to arbitration pursuant to the Contract and [Heritage] does not waive enforcement of the arbitration provision by filing this action to enforce its Lien." So, with the agreement of Heritage and Ms. Vest, the chancery court ordered the case stayed pending a final award in arbitration.

B.

By the time of the arbitration hearing, Heritage and Ms. Vest had stipulated to some important facts. They stipulated to $477,360.71 of the construction costs incurred by Heritage and that the builder's fee was 22.5%. They also had significantly narrowed the issues.

The parties submitted basically three claims for the arbitrator to decide. First, Heritage claimed an additional $5,874.25 in construction costs that Ms. Vest disputed. Second, Heritage claimed that Ms. Vest breached the contract and that it was entitled to interest on the unpaid balance under the contract and a $250 per day penalty for each day Ms. Vest occupied the home. Third, both parties claimed entitlement to attorney's fees and the costs of arbitration.

2

On the first claim, after the parties further compromised the amount in dispute, the arbitrator ordered Ms. Vest to pay $1,501.15 plus the associated builder's fee. The arbitrator found that Heritage failed to carry its burden to prove entitlement to the remaining amounts in dispute.

In considering the second claim, the arbitrator began with the language of the contract, which provided Heritage would deliver written construction draw requests and Ms. Vest would have five days from receipt to pay. The arbitrator found Heritage's "blatant disregard of this central payment provision and protocol in its own contract was astounding." The arbitrator also found that Heritage had sought to enforce its claims for a final payment before Ms. Vest's obligation to make a final payment had arisen. Heritage's final payment demand was "yet another oral and unsubstantiated request." And, when Ms. Vest made "continuing, repeated, and persistent requests for copies of actual invoices and/or an accounting to determine what she actually owed," Heritage, through Mr. Pennington, essentially "held the invoices hostage by agreeing to provide them only upon the simultaneous receipt of a check" from Ms. Vest. The arbitrator determined that Heritage only complied with the contract when its attorney sent a demand letter a few weeks before filing suit to enforce its mechanics' and materialmen's lien. That letter covered "a binder containing a discernible accounting and itemization."

The arbitrator found that Ms. Vest "obviously accepted the final accounting prepared and produced by [Heritage's] counsel" except for the builder's fee, which was asserted to be 30% in the letter, and the few disputed costs that were reserved for the arbitration hearing. She had failed to pay those amounts and instead placed the money in trust pending completion of arbitration. Alternatively, she had offered to release the funds if Heritage would accept them as a "final payment . . . and the complete amount due in this matter." The arbitrator determined that the "appropriate, logical, and reasonable thing to do was to pay these funds to [Heritage] without conditions and simply reserve all . . . rights to contest the disputed builder's fee and other charges being asserted against [Ms. Vest] in the pending arbitration." So he concluded that Ms. Vest owed 18% interest on those amounts through the date of payment to Heritage.[1]

The arbitrator denied Heritage's claim for a $250 per day penalty for Ms. Vest's occupancy of the home, which had ballooned to over $100,000 by the arbitration hearing. By its terms, the contract prohibited Ms. Vest from taking possession of or occupying her home until Heritage had been fully paid. Violation of the clause "result[ed] in a penalty of $250.00 per day for each day of Owner's wrongful possession or occupancy." The arbitrator reasoned that the "penalty was precisely that, a penalty unenforceable under

---

[1] The contract provided that, if Ms. Vest failed or refused to pay as required, unpaid construction costs would "draw interest at the lower rate of eighteen (18%) percent [sic] per annum or the maximum lawful contractual rate."

3

Tennessee law," but it was unnecessary to reach that issue because "[t]he evidence in this case unmistakably proved that [Heritage] expressly and clearly waived the . . . penalty." It did so when Mr. Pennington emailed Ms. Vest that her "move in is legal," gave her the keys without restrictions, and posted on his page about "another happy customer." The arbitrator was unpersuaded by Mr. Pennington's characterization of these events and his testimony that he had simply forgotten about the move-in penalty.

Finally, the arbitrator denied each party's claim for attorney's fees. He also split the costs of arbitration equally between them.

Following the arbitration, Heritage moved the chancery court to "modify, correct, or vacate" the parts of the arbitration award denying Heritage the $250 per day penalty and attorney's fees. The chancery court found that the arbitration award should not be disturbed. It also found that Ms. Vest, as the prevailing party, was entitled to award of attorney's fees for successfully defending against Heritage's motion. After considering an attorney's fees affidavit, the court awarded Ms. Vest $5,886.00 in attorney's fees by a separate order. Heritage then moved to alter or amend both orders, which the court denied.

## II.

On appeal, Heritage contends the award should have been vacated because the arbitrator exceeded his powers in two respects.[2] *See* 9 U.S.C. § 10(a)(4) (permitting a court to vacate an award "where the arbitrators exceeded their powers"). First, the arbitrator exceeded his powers by failing to award attorney's fees although the contract mandated an award to the prevailing party. Second, the arbitrator exceeded his powers by finding a waiver of the $250 per day penalty although the contract required any waiver to be in writing and signed by the parties. Finally, Heritage faults the chancery court for awarding Ms. Vest attorney's fees for defending against its motion to vacate the award.[3]

### A.

Under the Federal Arbitration Act—which both parties agree applies—a court's review of an arbitration award is deferential. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *see also Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 448 (Tenn. 1996). The court's focus is typically limited to the arbitration process rather than the substance of the arbitrator's interpretation of an agreement. *Zeon*

---

[2] In some instances, Heritage requests that the arbitration award be modified, but after citing the statutory grounds authorizing a court to modify an arbitration award, Heritage does not touch upon the grounds again. *See* 9 U.S.C. § 11.

[3] Heritage raised a fourth issue, namely that the court erred in denying its motion to alter or amend. *See* TENN. R. CIV. P. 59.04. But the brief includes no argument of the issue. So we deem the issue waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

*Chems., L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 982 (6th Cir. 2020); *see* 9 U.S.C. §§ 10-11.  This is so even in spite of claims that the arbitrator's decision contains either factual or legal errors.  *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citing *Misco,* 484 U.S. at 36); *Arnold*, 914 S.W.2d at 449.  Thus, courts uphold an arbitration award as long as the arbitrator was "even arguably construing or applying the contract."  *Misco*, 484 U.S. at 38; *Arnold*, 914 S.W.2d at 449.

An arbitration award may be unenforceable only when the arbitrator "strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice.'"  *Major League Baseball*, 532 U.S. at 509 (2001) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).  Even a court's conviction that the arbitrator "committed serious error" or made "improvident, even silly" decisions is an insufficient basis for a reviewing court to refuse to enforce the award.  *Misco*, 484 U.S. at 38-39.  We tolerate an arbitrator's errors because the parties bargained for an arbitrator's interpretation and application in place of a judge's decision.  *See Zeon Chemicals*, 949 F.3d at 982.

Here, the arbitration award contains "all the hallmarks of interpretation."  *Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 754 (6th Cir. 2007).  The arbitrator cited parts of the contract relevant to the disputed issues, including the provisions relating to attorney's fees and the $250 per day penalty.  He explained each party's views of the issues and the facts.  He then explained his understanding of the contract's language and applied it to the facts as he found them.

1. Attorney's Fees

As for the arbitrator's decision on attorney's fees, the contract states, "[s]hould either party hereto bring suit in court to enforce the terms hereof, the prevailing party shall have the right to recover all costs incident to the suit including, but not limited to, court costs and reasonable attorney's fees."  And "[t]he arbitrator shall, in the award, assess attorney's fees, arbitration fees, expenses, and compensation in favor of any party."  Heritage claims that it was the prevailing party at arbitration because it succeeded in recovering money from Ms. Vest.  So, it reasons, the contractual requirement that the arbitrator "assess" fees means the arbitrator was obligated to award Heritage attorney's fees.  *See Fannon v. City of LaFollette*, 329 S.W.3d 418, 430 (Tenn. 2010) (defining a prevailing party as one who has succeeded on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit).  Ms. Vest counters that Heritage cannot be the prevailing party because the arbitrator made findings that favored both parties.  She makes the better argument.

5

A natural inference from the arbitrator's decision to award no attorney's fees is that neither party prevailed.[4]  It also may be inferred from the arbitrator's analysis.  Tellingly, the award provides that, "although much more could be said in the findings related to the issues/claims in contention that actually drove this unnecessary dispute, the additional expense to do so is not justified considering the expenses already incurred by the parties that, respectfully, should have been avoided."  Our courts have recognized that a dispute may have no prevailing party.  *See, e.g., Federated Stores Realty, Inc. v. Huddleston*, 852 S.W.2d 206, 215 (Tenn. 1992) (holding that each party prevailed on one issue so there would be no award of attorney's fees); *Five Oaks Golf & Country Club, Inc. v. Farr*, No. M2013-01896-COA-R3-CV, 2014 WL 1168908, at *3-4 (Tenn. Ct. App. Mar. 20, 2014) (same).  And the arbitrator did not exceed his powers by finding no prevailing party here.  Although Heritage may have won a significant victory in recovering interest on the amounts Ms. Vest held in trust, its recovery was limited because of the arbitrator's finding that Heritage had not submitted draw requests in compliance with the contract.  Ms. Vest also successfully defended against Heritage's claim that a penalty was due.

2. Penalty

As for the arbitrator's decision not to award a $250 per day penalty based on waiver, that also results from a plausible interpretation of the parties' contract and the facts.  Heritage claims that the penalty and waiver provisions of the contract were not in dispute and the arbitrator had no discretion in the manner.  But Ms. Vest did contest the penalty.  And the contract recognized that its terms could be waived, specifically by a writing signed by the parties.  In declining to award the penalty, the arbitrator applied the contract's language.  He found that Heritage's email that the "move in is legal," presentation of keys with no restrictions or conditions attached, and social media post describing Ms. Vest as a "happy customer" constituted a waiver of the penalty.  Although a court may have made a different finding, that is insufficient ground to vacate the arbitration award.  *See Misco*, 484 U.S. at 36 (recognizing that "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract").

B.

Heritage argues the chancery court erred in awarding attorney's fees incurred in defending against its motion to modify, correct, or vacate the arbitration award.  As noted above, the parties' contract provided for the recovery of attorney's fees by "the prevailing party" when "either party . . . bring[s] suit in court to enforce the terms" of the contract.  *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn.

---

[4] Heritage contends that the arbitrator also failed to provide a sufficiently reasoned explanation for failing to award attorney's fees.  We disagree.

2009) (explaining that a party to a civil action in Tennessee generally may recover attorney fees only when a contractual or statutory provision creates the right to recover them). And, while there might have been no winners in the arbitration, there was clearly a winner on the motion to modify, correct, or vacate. Ms. Vest won, and thus was the prevailing party, by successfully defending the arbitration award. *Aylor v. Carr*, No. M2018-01836-COA-R3-CV, 2019 WL 2745625, at *3 (Tenn. Ct. App. July 1, 2019) (acknowledging that "the term 'prevailing party' refers to the party to a suit who successfully prosecutes the action or *successfully defends* against it" (quoting *Barrett v. Ocoee Land Holdings, LLC*, No. E2015-00242-COA-R3-CV, 2016 WL 297688, at *6 (Tenn. Ct. App. Jan. 25, 2016))).

## III.

The arbitrator did not exceed his powers. And the chancery court did not abuse its discretion in granting attorney's fees to Ms. Vest.[5] So we affirm.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

---

[5] Ms. Vest requests an award of attorney's fees incurred on appeal. We deem this issue waived because she failed to include this request as an issue on appeal. *See Hodge*, 382 S.W.3d at 335 (recognizing "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with [Tennessee Rule of Appellate Procedure] 27(a)(4)").