IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 6, 2005 Session

# WILLIAMS HOLDING COMPANY, d/b/a RALEIGH HILLS APARTMENTS v. SHARON T. WILLIS, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. 68349 T.D.     Robert L. Lanier, Judge**

---

**No. W1999-02733-SC-R11-CV - Filed July 1, 2005**

---

We granted this appeal to determine whether a defendant who was found 100% at fault in a negligence action submitted to arbitration was liable for the full amount of the plaintiff's damages where the plaintiff had already received half of the amount of damages in a settlement with another defendant. The Court of Appeals concluded that the arbitrator had exceeded his scope of authority by requiring the defendant to pay the full amount of damages and modified the judgment. After reviewing the record and applicable authority, we conclude that the trial court correctly determined that the arbitrator did not exceed his authority and that the defendant was not entitled to a credit based on the amount of damages received by the plaintiff in a settlement. Accordingly, the Court of Appeals' judgment is reversed, and the trial court's judgment is reinstated.

### Tenn. R. App. P. 11  Appeal by Permission; Judgment of the Court of Appeals Reversed and Trial Court Judgment Reinstated

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

James W. Cook, Memphis, Tennessee, for the Appellant, Williams Holding Company d/b/a Raleigh Hills Apartments.

Bruce D. Brooke, Memphis, Tennessee, for the Appellee, Joe Leavy.

**OPINION**

## Background

In March of 1995, the plaintiff, Williams Holding Company, filed a complaint in the Circuit Court for Shelby County, Tennessee, alleging negligence against the defendants, Sharon Willis, Antorio Brown, and Joe Leavy, which resulted in damage to the plaintiff's improved real property. The evidence is summarized below.[1]

The negligence complaint alleged that on August 11, 1992, Sharon Willis left her twelve-year-old son, Antorio Brown, and his twelve-year-old friend, Joe Leavy, in her apartment at 4205 Ann Arbor in Memphis, Tennessee, which was leased from the plaintiff, Williams Holding Company. According to the complaint, Leavy accidentally turned on the stove while using the microwave, which caused a pan of grease on the stove to catch fire. The fire spread throughout the apartment and into adjoining apartments owned by the plaintiff, Williams Holding Company.

Defendants Sharon Willis and Antorio Brown filed an answer denying that they were negligent. Likewise, defendant Leavy filed an answer denying that he was negligent.

The parties agreed to submit the litigation to arbitration, and the trial court ordered arbitration on May 28, 1997. Before the arbitration hearing was held, the plaintiff, Williams Holding Company, reached a settlement with defendants Sharon Willis and Antorio Brown. Under the settlement, Willis and Brown agreed to pay 50% of the damages caused by the fire, i.e., $36,707.32, plus court costs. A consent order was entered by the trial judge dismissing defendants Willis and Brown from the arbitration.

During the arbitration hearing held on December 1, 1998, the plaintiff, Williams Holding Company, and the remaining defendant, Joe Leavy, stipulated that the plaintiff's damages caused by the fire totaled $73,414.64, and that defendants Willis and Brown had paid one-half of the plaintiff's damages in their settlement agreement. The arbitrator stated that because the full amount of the plaintiff's damages had been stipulated, "the issue to determine is the degree of negligence, if any, of the defendant, Joe Leavy."

The plaintiff introduced into evidence the fire marshal's investigative field report during the arbitration hearing. The report stated that the "fire started when the eye beneath a skillet of grease was accidentally left on." The report further stated that Brown told investigators that he and Leavy had been using the microwave when Leavy "bumped into the control knobs of the stove and accidentally turn[ed] the eye on beneath a skillet with grease in it." Finally, the report said that

---

[1] The record on appeal contains the plaintiff's complaint, the defendants' answers, and the pleadings filed in the trial court. Although the record does not contain a verbatim transcript of the arbitration proceeding, the plaintiff and defendant Leavy submitted statements of the evidence as to the events that transpired during arbitration.

Leavy "accidentally bumped into the stove's control knobs" and then "attempted to turn the eye off but evidently did not."

The plaintiff also introduced the testimony of Leonard Richmond, the manager of the apartment complex. Richmond testified that defendant Sharon Willis had made numerous complaints about her apartment and had requested several repairs. Richmond further testified, however, that Willis had never complained of problems with the stove.

Defendant Leavy testified at the arbitration hearing that he had accidentally turned on the stove and then tried to turn it off. Leavy also testified that Brown told him there had been trouble with the control knob and that Brown said he would check on it. Leavy testified that he and Brown left the apartment to go skateboarding near the apartment complex. On cross-examination, however, Leavy admitted he had told fire marshal investigators that he and Brown had left the apartment to go swimming.

The arbitrator found that "the most credible version of what occurred on the date of this fire [was] the one contained in the report of [the fire marshal]." Further, the arbitrator found that

> The facts as stated in the [fire marshal's] report reflect that the defendant, Joe Leavy, bumped into the stove at which time the eye was turned on, and he attempted to turn it off, but evidently, he did not. . . . It is therefore, the opinion of the arbiter that the defendant, Joe Leavy, was negligent and was responsible for the fire in question and resulting damages.

The arbitrator also concluded that "the defendant, Joe Leavy, is responsible for 100 percent of the damages as stipulated, to-wit, $73,414.64."

Following the arbitrator's decision on March 4, 1999, defendant Leavy filed a motion to vacate, modify or correct the arbitration award with the trial court. The motion requested the trial court to grant a credit or set-off for the amount the plaintiff received under the plaintiff's settlement with defendants Willis and Brown. In denying the motion on March 29, 1999, the trial court reasoned:

> [A] defendant . . . is not entitled to receive credit for some settlement which the plaintiff has made with a third party, either before or during the pendency of the lawsuit. The defendant must pay his *pro rata* share of his legal responsibility for whatever the damages may be. . . . [D]efendant Leavy was found by the arbitrator to be 100% responsible for the damage to the building. Therefore, there is no reason for him to receive any credit for any other sums which the plaintiff has been able to obtain.

-3-

Defendant Leavy's notice of appeal was filed on April 27, 1999. On August 17, 2004, the Court of Appeals reversed the trial court, concluding that the arbitrator had exceeded his authority by requiring defendant Leavy to pay the plaintiff's damages in full where it was stipulated that defendants Willis and Brown had paid one-half of the plaintiff's damages, i.e., $36,707.32. The intermediate appellate court then modified the arbitration award to require Leavy to pay only $36,707.32, instead of the full amount of the property damage suffered by the plaintiff, i.e., $73,414.64.[2]

We granted this appeal.

## Analysis

The plaintiff, Williams Holding Company, argues that the Court of Appeals erred in concluding that the defendant, Joe Leavy, who was found 100% at fault, was entitled to a credit for the amount the plaintiff received in a settlement with defendants Willis and Brown. Defendant Leavy responds that the Court of Appeals properly concluded that the arbitrator exceeded his authority by requiring him to pay the full amount of the plaintiff's damages.

*Standard of Review*

We begin our review with the well-established principle that "courts should play only a limited role in reviewing the decisions of arbitrators." Arnold v. Morgan Keegan & Co., 914 S.W.2d 445, 448 (Tenn. 1996). The statutory provisions of the Uniform Arbitration Act "limit *severely* the trial court's authority to retry the issues decided by arbitration." Id. at 448 (emphasis added); see also Tenn. Code Ann. § 29-5-301 et seq. (2000). Likewise, when reviewing a trial court's decision in an arbitration case, an appellate court "should review findings of fact under a 'clearly erroneous' standard" and should review questions of law "with the utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." Arnold, 914 S.W.2d at 449-50.

---

[2] We are concerned about the delay in resolving this 1992 dispute. The negligence complaint for property damage was filed in March of 1995. The trial court ordered arbitration more than two years later on May 28, 1997. The arbitration hearing occurred eighteen months later on December 1, 1998, and the arbitration decision was filed three months later on March 4, 1999. After the trial court affirmed the award, notice of appeal was filed in April of 1999. For reasons that are not evident in the appellate record, over four years passed before the arbitrator approved the statement of the record, and the trial court authenticated the statement of the evidence for the record on appeal on September 9, 2003. Less than one year later, on August 17, 2004, the Court of Appeals' opinion was issued. In all, thirteen years have passed since the incident occurred in 1992, and ten years have passed since the negligence complaint was filed. All courts have a responsibility to manage their dockets efficiently and when arbitration is ordered, to assure and supervise its timeliness.

*Scope of Arbitrator's Authority*

The Uniform Arbitration Act states that a trial court "shall confirm an [arbitration] award, unless . . . grounds are urged for vacating or modifying or correcting the award." Tenn. Code Ann. § 29-5-312 (2000).[3] One such ground for vacating an award, which is urged by the defendant in this case, states that an arbitration award shall be vacated by the trial court where "[t]he arbitrators exceeded their authority." Tenn. Code Ann. § 29-5-313(a)(3).

As this Court has said, "the scope of the arbitrator's authority is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute." D & E Constr. Co. v. Robert J. Denley Co., 38 S.W.3d 513, 518 (Tenn. 2001) (quoting Int'l Talent Group, Inc. v. Copyright Mgmt., Inc., 769 S.W.2d 217, 218 (Tenn. Ct. App. 1989)); see also Arnold, 914 S.W.2d at 450 (stating that the scope of arbitrator's authority is granted by the arbitration agreement). Arbitrators exceed their authority when they decide an issue that is not within the scope of the agreement to arbitrate. D & E Constr. Co., 38 S.W.3d at 518.

In the present case, the record does not contain a specific arbitration agreement between the plaintiff and any of the defendants. Instead, the trial court stated in a consent order that "the parties have agreed to arbitrate this matter."[4]

At the beginning of the arbitration hearing, plaintiff Williams Holding Company and defendant Leavy stipulated that the plaintiff's full damages totaled $73,414.64 and that the plaintiff already had settled its claim against defendants Willis and Brown for $36,707.32. During the arbitration hearing, the plaintiff sought the entire amount of damages on the basis that defendant Leavy was 100% at fault. Defendant Leavy, on the other hand, argued that he was not at fault. After the hearing, the arbitrator found that defendant Leavy "was negligent" and was "responsible for 100 percent of the damages."

After reviewing the record, we conclude that the arbitrator did not exceed his scope of authority. The issue of awarding the full amount of the plaintiff's damages, i.e., $73,414.64, was before the arbitrator. The issue of determining the percentage of defendant Leavy's fault in causing the damages was likewise before the arbitrator. Although the parties had stipulated that the plaintiff received one-half of the damages in a settlement with defendants Willis and Brown, nothing limited the arbitrator's authority to find that defendant Leavy was not at fault or was only 50% at fault in causing the plaintiff's damages, or that he was not liable at all or liable for only $36,707.32. Accordingly, we hold that the arbitrator did not exceed his scope of authority by finding that defendant Leavy was 100% at fault and thus liable for the full amount of the plaintiff's damages.

---

[3] See Tenn. Code Ann. § 29-5-313 (2000) (grounds for vacating arbitration award); Tenn. Code Ann. § 29-5-314 (2000) (grounds for modifying or correcting arbitration award).

[4] At the time the order was entered, the plaintiff had not reached a settlement with defendants Willis and Brown.

In reaching this conclusion, we disagree with defendant Leavy's position, and the Court of Appeals' conclusion, that the arbitrator exceeded his scope of authority or that the trial court "clearly erred" by refusing to grant defendant Leavy a credit based on the amount the plaintiff received in the settlement with defendants Willis and Brown.

Our conclusion is based on the fact that there is no authority in Tennessee that supports defendant Leavy's argument that a non-settling defendant who is found 100% at fault is entitled to a credit or set-off for the amounts paid to the plaintiff by other settling defendants. To the contrary, under principles of comparative fault, a non-settling defendant is *not* entitled to a credit for amounts paid by a settling defendant because the non-settling defendant is required to pay damages based on his or her percentage of fault. Varner v. Perryman, 969 S.W.2d 410, 413 (Tenn. Ct. App. 1997); see also McIntyre v. Balentine, 833 S.W.2d 52, 58 (Tenn. 1992) (emphasizing that the goal of comparative fault is to link one's liability to one's degree of fault).

Although defendant Leavy places great emphasis on the need to avoid granting a windfall to the plaintiff, the mere possibility that plaintiffs may, by settling with some defendants, receive more than their actual damages does not change the fact that non-settling defendants are obligated to pay damages based on the percentage of their fault. As the United States Supreme Court has explained:

> we must recognize that settlements frequently result in the plaintiff's getting more than he would have been entitled to at trial. Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set. It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss. In fact, one of the virtues of the proportionate share rule is that . . . it does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests.

McDermott, Inc. v. AmClyde, 511 U.S. 202, 219-20 (1994) (emphasis added).

In addition, there is no authority in Tennessee that supports defendant Leavy's claim that a credit is appropriate under a theory of contribution. A statutory "right of contribution exists only in favor of a tort-feasor who has paid more than the proportionate share of the shared liability between two (2) or more tort-feasors for the same injury . . . ." Tenn. Code Ann. § 29-11-102(b) (2000) (emphasis added). In such cases, "the tort-feasor's total recovery is limited to the amount paid by the tort-feasor in excess of this proportionate share." Id.

Here, the arbitrator found defendant Leavy to be 100% at fault in causing the plaintiff's damages. As a result, requiring Leavy to pay 100% of the plaintiff's total damages does not result

in him paying more than his proportionate share.  Instead, his liability is linked to his percentage of fault under the principles of comparative fault.  McIntyre, 833 S.W.2d at 58.

## **Conclusion**

After reviewing the record and applicable authority, we conclude that the arbitrator did not exceed his authority in determining that defendant Leavy was 100%  at fault and liable for the full amount of the plaintiff's damages.  We further conclude that defendant Leavy was not entitled to a credit based on the amount received by the plaintiff in a settlement with other defendants.  Accordingly, the Court of Appeals' judgment is reversed and the trial court's judgment is reinstated.  Costs of appeal are taxed to the defendant, Joe Leavy, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE