NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0629n.06
Filed: August 24, 2006

Case No. 03-5234

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WILLIAM R. ENGSTROM; MARY B.           )
ENGSTROM; HAROLD H. ENGSTROM;          )
JAMES M. PACHECO; REBECCA L.           )
HALL; WILLIAM D. ROSS; ROBERT L.       )     ON APPEAL FROM THE
MOZZI; RUTH M. MOZZI; and RICHARD      )     UNITED STATES DISTRICT
BIALKO,                                )     COURT FOR THE EASTERN
                                       )     DISTRICT OF TENNESSEE
     Plaintiffs-Appellants,            )
                                       )
           v.                          )     A M E N D E D
                                       )
JACK MAYFIELD;and BAKER,               )
DONELSON, BEARMAN & CALDWELL,          )
P.C.,                                  )
                                       )
     Defendants-Appellees.             )
                                       )
_____ )

BEFORE:  SUHRHEINRICH and BATCHELDER, Circuit Judges; RICE, District Judge.[*]

ALICE M. BATCHELDER, Circuit Judge.  Plaintiffs-Appellants William R. Engstrom,

Mary B. Engstrom, Harold H. Engstrom, James M. Pacheco, Rebecca L. Hall, William D. Ross,

Robert L. Mozzi, Ruth M. Mozzi, and Richard Bialko (collectively, "plaintiffs") appeal from the

district court's grant of summary judgment in favor of Defendants-Appellees Jack Mayfield and the

law firm of Baker, Donelson, Bearman & Caldwell, P.C. ("Baker Donelson") in this diversity action

---

[*]The Honorable Walter Herbert Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

for breach of fiduciary duty, negligence, fraudulent non-disclosure, constructive trust and unjust enrichment, arising out of an unsuccessful investment venture. The district court granted the defendants summary judgment on all claims, holding that the plaintiffs had brought an earlier lawsuit, the settlement of which had fully compensated them for their investment losses. On appeal, plaintiffs argue that the district court erred in ruling that defendants are entitled to a credit for the settlement amount paid in the earlier lawsuit and that plaintiffs are not entitled to recover as damages the attorneys' fees and expenses they incurred in that litigation. Defendants renew their contention, made below but not addressed by the district court, that all of the plaintiffs except the Engstroms should be dismissed for lack of subject matter jurisdiction because none of them alleges damages sufficient for diversity jurisdiction. We previously issued an order certifying the attorneys' fees question to the Supreme Court of Tennessee, which that court recently declined to answer. This case is now before us once again, and for the following reasons, we AFFIRM in part and REVERSE in part.

## I.

In 1996, ISD Communications, LLC ("ISD"), a Delaware limited liability company, sought to purchase an interest in X-Com, Inc., an Arkansas corporation, and thereafter to participate in the development and marketing of X-Com's technology and products. ISD solicited investments from other individuals and entities through a Private Placement Memorandum ("PPM"), which provided that investors could purchase membership "units" in ISD for $20 per unit. Attorney Jack Mayfield, then a member of the Tennessee law firm of Baker Donelson, represented ISD with respect to the private solicitation and prepared the various documents, including the PPM, which these plaintiffs received, and upon which they presumably relied in purchasing their membership interests in ISD.

2

William and Mary Engstrom invested $80,000; Harold Engstrom, $75,000; Pacheco, $10,000; Hall, $8,000; Ross, $7,000; Robert and Ruth Mozzi, $10,000; and Bialko, $10,000.

ISD's investment in X-Com was unsuccessful, and plaintiffs' investments became essentially worthless. The plaintiffs filed suit in Massachusetts state court against ISD and others — not including Mayfield or Baker, Donelson — to recover the plaintiffs' $200,000 investment with ISD. The action was removed to the United States District Court for the District of Massachusetts, where it proceeded under the caption *Engstrom et al. v. Elliott at al.*, Civil Action No. 98-CV-10250-RCL ("*Engstrom I*"). The plaintiffs eventually settled *Engstrom I* for $375,000—well above the amount of their initial investment. In the settlement agreement, defendants X-Com and David Erisman agreed to pay plaintiffs $50,000, while ISD and other defendants separately agreed to pay a total of $325,000. The release agreement between plaintiffs and ISD specifically stated that the payment represented plaintiffs' initial investment, plus an additional $125,000 "in compromise of plaintiffs' claims for attorneys fees asserted in the Lawsuit."[1]

While *Engstrom I* was still pending, the plaintiffs filed the present action, claiming that Mayfield had served as escrow agent for the plaintiffs' funds designated for purchase of the membership units, and that he had prematurely released those funds to ISD in violation of a "right to rescind" provision in the PPM and related documents. Plaintiffs' complaint in this action raises against Mayfield and Baker Donelson claims of breach of fiduciary duty, negligence, fraudulent non-disclosure, constructive trust, and unjust enrichment, and seeks damages for their investment losses. The plaintiffs also claim that they incurred additional attorneys' fees litigating *Engstrom I*,

---

[1]The agreement specifically acknowledged that "[n]o provision of this Settlement and Release Agreement is intended to release, or shall be deemed to release, claims of any kind or nature which the plaintiffs have or may assert against Jack Mayfield or the law firm of Baker Donelson Bearman & Caldwell, P.C., including the plaintiffs' claims now pending in the [United States District Court for the Eastern District of Tennessee.]"

for a total amount of approximately $425,000, and that they should be entitled to recover those fees in the present suit because Mayfield's alleged actions led to plaintiffs' loss, which, in turn, necessitated the litigation in *Engstrom I*.

After *Engstrom I* was settled and dismissed, both parties moved for summary judgment in the present case. The district court granted the defendants' motion, denied the plaintiffs', and dismissed plaintiffs' case with prejudice, holding that the plaintiffs had already been fully compensated for their losses as a result of that settlement. With regard to the claim for attorneys' fees incurred in *Engstrom I*, the district court noted that Tennessee follows the "American Rule" that, absent a statute or contract providing to the contrary, a prevailing party in a lawsuit may not recover its attorneys' fees from the losing party "however wrongful may have been the suit, or however groundless the defense." Although the plaintiffs argued that Tennessee case law allows for an exception to that rule, the district court found that the exception did not apply in a case such as this, and to apply it would allow the narrow exception to totally supplant the rule. The court therefore granted summary judgment to Mayfield and Baker Donelson. The plaintiffs timely appealed.

## II.

Defendants argue on appeal that the claims of plaintiffs James Pacheco, Rebecca Hall, William Ross, Robert Mozzi, Ruth Mozzi, and Richard Bialko should be dismissed for lack of subject matter jurisdiction because they did not establish the more than $75,000 jurisdictional minimum amount in controversy required for diversity jurisdiction.[2] *See* 28 U.S.C. § 1332(a).

---

[2]Though plaintiff Harold Engstrom invested $75,000 in the venture and claims those losses here, the defendants did not make a motion to dismiss his claims as not meeting the jurisdictional amount in controversy as they did with the other plaintiffs, presumably on the grounds that their claimed investment losses were below the jurisdictional amount in controversy. Though our finding that the district court had the power to exercise supplemental jurisdiction over the

4

Although defendants raised this issue below, the district court did not address it in its memorandum opinion, apparently accepting supplemental jurisdiction over the above claims without comment. Because the jurisdictional question rightly precedes a discussion of the merits of plaintiffs' claims, we address this issue first. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 377 F.3d 592, 594 (6th Cir. 2004), *affirmed on other grounds*, 545 U.S. 308 (2005).

To support their argument, defendants rely on *Zahn v. International Paper Co.*, in which the Supreme Court held that each plaintiff in a class action diversity suit must individually satisfy the amount in controversy. 414 U.S. 291, 294-95 (1973). Plaintiffs respond that the federal courts should exercise supplemental jurisdiction over their claims pursuant to 28 U.S.C. § 1367(a), the "Judicial Improvement Act of 1990." That section provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, *the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a) (emphasis added).

The Supreme Court has recently weighed in on this precise issue in order to resolve a circuit split, holding in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 125 S. Ct. 2611, 2615 (2005), "that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims

plaintiffs' claims that did not meet the jurisdictional amount in controversy makes this a moot point, it is worth noting that the defendants probably should also have included Harold Engstrom in the motion to dismiss, as his claim most likely did not "*exceed*[] the sum or value of $75,000 . . . ." 28 U.S.C. § 1332(a) (emphasis added).

are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." In *Exxon Mobil*, the Supreme Court concluded that § 1367(a) unambiguously overruled its previous holding in *Zahn*. *Id*. at 2622, 2625. We therefore hold that because William and Mary Engstrom satisfy the amount-in-controversy requirement of § 1332(a), and because the claims of Harold Engstrom, Pacheco, Hall, Ross, Robert and Ruth Mozzi, and Richard Bialko undeniably arise out of the same case or controversy over which the district court has original jurisdiction, supplemental jurisdiction over the claims of the above named plaintiffs is proper.

## III.

Because subject matter jurisdiction is proper, we turn to the plaintiffs' primary contention on appeal, which is that the district court erred by granting defendants' motion for summary judgment. We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The district court granted defendants' motion because it found that the plaintiffs had already been fully compensated for the loss of their $200,000 investment as a result of the settlement

agreement in *Engstrom I*, and that the plaintiffs are not entitled to recover as damages the attorneys' fees and expenses they incurred in *Engstrom I*. Because the plaintiffs brought claims under tort theories and equitable contract-like theories, and the distinction between the two affects our analysis, we will examine them separately.

**A. Tort Theories**

We begin by addressing the plaintiffs' claims that the defendants are entitled to neither a credit under Tennessee's comparative fault system nor contribution under the Tennessee Uniform Contribution Among Tort-Feasors Act, TENN. CODE ANN. § 29-11-101, *et seq.*, for the compensation the plaintiffs received in the settlement in *Engstrom I* for the loss of their $200,000 investment.

Plaintiffs first contend that, under Tennessee's comparative fault system, the defendants are not entitled to a credit for the settlement paid to the plaintiffs by ISD and the other defendants in *Engstrom I*. Plaintiffs rely on *Varner v. Perryman*, 969 S.W.2d 410, 413 (Tenn. Ct. App. 1997), for the proposition that under Tennessee's comparative fault system, a non-settling tortfeasor is not entitled to a credit for settlement amounts paid by a settling tortfeasor. Defendants respond that despite the adoption of comparative fault, Tennessee has long recognized the principle that there can be but one satisfaction for the same injury. *See, e.g., Brown v. Kencheloe*, 43 Tenn. 192, 197 (1866); *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 172 (Tenn. Ct. App. 1987); *Rosenbaum v. First American Nat'l Bank of Nashville*, 690 S.W.2d 873, 877 (Tenn. Ct. App. 1985). However, the cases cited by the defendants preceded *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), in which the Supreme Court of Tennessee adopted a modified system of comparative fault, and our review of recent precedent from the Supreme Court of Tennessee convinces us that the "one satisfaction rule" no longer survives under the Tennessee's comparative fault system. "[U]nder principles of

7

comparative fault, a non-settling defendant is *not* entitled to a credit for amounts paid by a settling defendant because the non-settling defendant is required to pay damages based on his or her percentage of fault." *Williams Holding Co. v. Willis*, 166 S.W.3d 707, 712 (Tenn. 2005) (emphasis in original). Indeed, the court went on to state that "the mere possibility that plaintiffs may, by settling with some defendants, receive more than their actual damages does not change the fact that non-settling defendants are obligated to pay damages based on the percentage of their fault." *Id*.

We are aware that, in general, "[a]llowing a plaintiff to sue defendants in separate, consecutive actions would defeat the efficiency and fairness that are the objectives of the principles of comparative fault." *Samuelson v. McMurtry*, 962 S.W.2d 473, 476 (Tenn. 1998). The Supreme Court of Tennessee, however, has clarified that a plaintiff's settling with one co-defendant in one lawsuit does not establish a basis for the dismissal of remaining co-defendants in a second separate but identical lawsuit, provided that there has been no adjudication of or allocation of fault in the first lawsuit and the current defendant has not been denied the opportunity to have fault apportioned against the settling defendant under the affirmative defense of comparative fault. *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 653-55 (Tenn. 2003). There was no adjudication or allocation of fault in the lawsuit against ISD and the other defendants from *Engstrom I*, and while the current defendants did not plead the comparative fault of the settling defendants as an affirmative defense, they may presumably request leave of court to do so. We therefore hold that, based on the prevailing precedent in Tennessee, the district court erred in granting summary judgment to the defendants and this case must be remanded for trial so that a jury can assess the comparative fault, if any, of Mayfield and Baker Donelson to determine whether they are liable for any percentage of the plaintiffs' actual damages.

Our analysis is not changed by the defendants' novel assertion, which was accepted by the district court, that they are entitled to contribution under the Tennessee Uniform Contribution Among Tort-Feasors Act, T.C.A. § 29-11-101, *et seq.* To be sure, the Supreme Court of Tennessee has held that contribution may still be viable in certain limited circumstances under Tennessee's comparative fault system, including "in the appropriate case in which fairness demands." *General Electric Co. v. Process Control Co.*, 969 S.W.2d 914, 916 (Tenn. 1998) (internal quotation marks omitted). The plaintiffs are correct, however, that there is no authority in Tennessee to support the defendants' claim that a credit is appropriate under a theory of contribution under the facts of this case. The Supreme Court of Tennessee has made clear that a statutory "right of contribution exists *only in favor of a tort-feasor who has paid more than the proportionate share of the shared liability* between two (2) or more tort-feasors for the same injury . . . ." *Willis*, 166 S.W.3d at 712 (quoting T.C.A. § 29-11-102(b)) (emphasis in original). Because Mayfield and Baker Donelson have not – at least as yet – paid any portion of the plaintiffs' losses, they are not as yet entitled to a right of contribution under Tennessee law.

**B. Non-Tort Theories**

Though it is clear that Tennessee has abandoned the one-recovery rule in tort cases, it does not appear that it has done so with regard to non-tort cases. In *Williams Holding Co. v. Willis*, the Tennessee Supreme Court made clear that its holding that a non-settling defendant is not entitled to a credit for amounts paid by a settling defendant was based on its adoption of the modified comparative fault theory in *McIntyre v. Balentine*. *Willis*, 166 S.W.3d at 712. Comparative fault, strictly speaking, has no application to non-tort situations, and none of the cases addressing the ability of a non-settling defendant to defend on the basis of full satisfaction of the plaintiff's claim

9

by a settling defendant has found that the principle should apply to non-tort claims. *See McIntyre*, 833 S.W.2d at 58; *Willis*, 166 S.W.2d at 711-12; *McNabb*, 98 S.W.3d at 653-55; *Varner*, 969 S.W.2d at 413-14.

Moreover, as the district court noted, the collateral source rule, which prevents a tortfeasor from reducing his damages payable by amounts the plaintiff has received from sources other than the tortfeasor, has no application in contractual or quasi-contractual claims. *See Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 191 F.3d 675, 693 (6th Cir. 1999) (citing *Drewry v. Cont'l Cas. Co.*, 1992 WL 60876, *5-6 (Tenn. Ct. App. 1992) (policy of not allowing non-breaching party to be put in a position better than he would have been in had the contract been performed outweighs policy behind the collateral source rule)); *Menihan Co. v. Hopkins*, 164 S.W. 775, 776-77 (Tenn. 1914). We therefore conclude that the one-recovery rule continues to apply to non-tort claims as it did before *McIntyre* (*see TSC Industries*, 743 S.W.2d at 172; *Farley v. Clayton*, 928 S.W.2d 931, 934 (Tenn Ct. App. 1996)), the collateral source rule likewise does not apply, and the district court rightly dismissed the non-tort claims as barred by the earlier settlement of *Engstrom I*.

## C. Attorneys' Fees

We turn now to the plaintiffs' claim that the district court erred in finding that they are not entitled to recover as damages the attorneys' fees and expenses they incurred in litigating *Engstrom I*. Tennessee generally follows the "American Rule" that attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity. *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). Tennessee recognizes two distinct exceptions to that rule, however, and allows recovery of attorneys' fees

10

under an implied indemnity agreement in appropriate cases and under an independent tort theory. *Pullman,* 693 S.W.2d at 337, 339.

In our order certifying the question of attorneys' fees to the Supreme Court of Tennessee, we noted that both the Tennessee courts and this court have applied the implied indemnity agreement exception only in cases where the indemnitee incurred attorneys' fees in the defense of suits. *See Chambers v. City of Chattanooga*, 71 S.W.3d 281, 285 (Tenn. Ct. App. 2001) ("The implied indemnity doctrine applies when one party has to incur attorney fees to *defend* an action resulting from another's fault") (emphasis added); *Electric Controls v. Ponderosa Fibres of America, Inc.*, 19 S.W.3d 222, 229-30 (Tenn. Ct. App. 1999) ("[T]he indemnitee's right to recover attorney's fees . . . depends . . . upon the fact that the indemnitee . . . *was forced to defend itself* due to some fault or wrongdoing by the indemnitor") (emphasis added); *Morse/Diesel, Inc. v. Provident Life & Accident Ins. Co.*, 166 F.3d 1214, 1998 WL 739886, at *6 (6th Cir. 1998) (Table) (holding that "[t]o show a relationship that would support indemnification for attorney's fees, [the indemnitee] *must demonstrate that it was defending itself* against allegations of the tortious acts of [the indemnitor]") (emphasis added). The Supreme Court of Tennessee then declined to answer the certified question, ending any debate on this particular issue of law for the time being. Consequently, had the plaintiffs relied on the implied indemnity agreement exception, their argument would be foreclosed by the fact that they seek recovery of attorneys' fees incurred not in defending, but in bringing a lawsuit against a third party.

Nevertheless, it is not the implied indemnity agreement exception, but the independent tort theory exception that the plaintiffs rely on in this case. The *Pullman* court expressly recognized and adopted the independent tort theory as a second exception to American Rule. *Pullman*, 693 S.W.2d

at 340. In doing so, the court quoted the Restatement (Second) of Torts § 914(2) (1979), which states:

> "One who through the tort of another has been required to act in the protection of his interests by *bringing or defending* an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

*Id.* (emphasis added). It is clear that this provision envisions application of the independent tort exception both "when the preceding action was brought against the present plaintiff either by a third person or by the state, and also when the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person." RESTATEMENT (SECOND) OF TORTS § 914(2) cmt. b (1979). Indeed, in *Whitelaw v. Brooks*, the Tennessee Court of Appeals held that a plaintiff landowner was entitled to recoup attorneys' fees and expenses incurred in *bringing* an earlier lawsuit against certain encroaching landowners in a later negligence action against the land surveyor. 138 S.W.3d 890, 894 (Tenn. Ct. App. 2003) (applying the independent tort exception of *Pullman*), *application for permission to appeal denied* (Tenn. June 21, 2004).

Of course, the plaintiffs must still allege sufficient facts concerning the defendants alleged negligence to state a cause of action for the recovery of attorneys' fees and expenses under the independent tort exception. *See Pullman*, 693 S.W.2d at 340. In this case, the plaintiffs' claim that Mayfield had served as escrow agent for the plaintiffs' funds designated for purchase of the membership units, and that he prematurely released those funds to ISD in violation of a "right to rescind" provision in the PPM and related documents, is sufficient to state a cause of action for the plaintiffs' recovery of attorneys' fees and expenses incurred in *Engstrom I*.

**IV.**

12

Although we find it troubling that under the current state of the law in Tennessee, plaintiffs may set themselves up to obtain a windfall by filing separate lawsuits against separate defendants, such a reality is immaterial to our disposition of this case because we are constrained to follow the law of Tennessee as we interpret it, and the precedent of the Supreme Court of Tennessee is explicit on the issues presented. Accordingly, we **AFFIRM** the judgment of the district court granting the defendants summary judgment on the non-tort claims, **REVERSE** the judgment of the district court granting the defendants summary judgment on the tort claims, and **REMAND** the tort claims and claims for attorneys' fees to the district court so that a jury can assess the comparative fault, if any, of Mayfield and Baker Donelson, to determine whether they are liable for any percentage of the plaintiffs' actual damages, and to determine whether the plaintiffs are entitled to recoup the attorneys' fees and expenses they incurred in litigating *Engstrom I* under the independent tort exception to the American Rule which prevails in Tennessee.